UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

THORNTON WALKER

CRIMINAL ACTION

NO. 09-96-JJC-SCR

**RULING ON MOTION TO SUPPRESS EVIDENCE**

This matter is before the Court on Defendant's motion to suppress evidence (doc. 14).  The government filed an opposition (doc. 18).  The Court held an evidentiary hearing on November 16, 2009, after which it ordered additional briefs.  Defendant filed his post-hearing brief on January 23, 2010 (doc. 22) and the government filed its post-hearing brief on February 19, 2010 (doc. 25).  After careful review of the aforementioned filings and hearings, for the following reasons, Defendant's motion (doc. 14) is GRANTED.

**I.  Factual Background**

On May 30, 2009, members of the Iberville Parish Sheriff's Office were on patrol in Maringouin, Louisiana.  Earlier that evening, there was a shooting in Maringouin, so patrols were increased that night in the neighborhood where the shooting occurred.  Around 10:00 p.m. that evening while on patrol, Detectives Ronald Hebert and Jeremy Sanchez effected a traffic stop on a tan Buick

1

Century.  The reason for the traffic stop was a problem with the vehicle's taillight.  Back-up arrived shortly thereafter from Deputies Jesse Anthony and Cory Caillet.

Defendant Walker was the passenger in the vehicle at the time of the traffic stop.  The driver of the vehicle, Ms. Narkeita James, was asked to exit the vehicle; police requested that the defendant remain in the vehicle.  Apparently, the defendant made more than one attempt to exit the vehicle, so when the back-up deputies arrived at the scene, both Deputies Anthony and Caillet went to the passenger side of the vehicle.  According to the deputies' testimony, they believed the defendant was acting suspiciously at the scene of the traffic stop.[1]  Because of this alleged suspicious behavior, Deputy Caillet conducted a pat-down of the defendant.

During that pat-down, according to Deputy Caillet's testimony, he saw and felt a bulge in the defendant's right pocket.  When the defendant consented, Deputy Caillet "went into his right pocket and retrieved the firearm."  Transcript of Motion to Suppress Hearing 11/16/2009, p. 45 (doc. 21).  Following a background check that revealed the defendant to be a convicted felon, the defendant was arrested and subsequently charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

---

[1] Deputies Anthony and Caillet testified at the motion to suppress hearing that the defendant appeared suspicious because:  the defendant had his hand over his right pocket (where the weapon at issue was found); the defendant was not cooperating with questioning; the defendant appeared nervous; the defendant was not making eye contact.

2

**II. Issues Presented**

Defendant now moves to suppress the gun (a Cobra model CA-380, .380 caliber pistol) and any ammunition seized as a result of the pat-down search of the defendant's person on May 30, 2009.  Defendant urges that the traffic stop was unreasonable under the Fourth Amendment because there was neither probable cause nor reasonable suspicion to stop the vehicle in which he was a passenger on the night of May 30, 2009.  Defendant further argues that even if the stop itself was lawful, the subsequent pat-down search of his person cannot stand because the officers lacked reasonable belief that he was armed and dangerous to justify the search.

**III. Law and Analysis**

*A. Burden of Proof*

In challenging a search or seizure, the defendant normally bears the burden of proving the unconstitutionality of such a search or seizure by preponderance of the evidence.  *U.S. v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005).  However, upon challenge of warrantless searches or seizures, the burden lies with the government, which must prove the search or seizure to be constitutionally valid.  *Id*.

*B. Legality of Traffic Stop*

It is undisputed by the parties that the passenger of a car subject to a traffic stop has been seized under the Fourth Amendment and may thus challenge the validity of a traffic stop.  *Brendlin v.* California, 551 U.S. 249, 263

(2007).  The decision to conduct a traffic stop is reasonable under the Fourth Amendment when the police have probable cause or reasonable suspicion to believe that a traffic violation has occurred.  *Whren v. U.S.*, 517 U.S. 806, 810 (1996); *Delaware v. Prouse*, 440 U.S. 648, 663 (1979).

In this case, the defendant urges that police lacked probable cause or reasonable suspicion to stop the vehicle in which he was a passenger on the night in question.  Specifically, the defendant argued the officers lacked probable cause or reasonable suspicion because the vehicle was not in violation of any provision of Louisiana's traffic laws.  The government asserts, and testimony from the officers at the evidentiary hearing indicates, that the reason for the traffic stop was a problem with the vehicle's tail light.

However, there is a question as to what was wrong with the vehicle's tail light, namely whether the tail light was burned out (meaning, not illuminated) or whether the tail light's plastic casing was cracked.  This distinction is important because, as both parties agree in their post-hearing memoranda, the vehicle would only be in violation of Louisiana's traffic laws if the tail light was burned out at the time of the traffic stop.  The defendant argues the car's tail light was merely cracked and, thus, not a violation of Louisiana's traffic laws.

The Court held an evidentiary hearing on defendant's motion to suppress on November 16, 2009.  At this hearing, three of the four officers present at the scene of the traffic stop testified as to what they observed about the tail light that

4

night. Detective Sanchez and Deputy Anthony testified that the tail light was both burned out and cracked on the night in question.

However, the third officer, Detective Hebert, could not remember if the tail light was burned out. Additionally, defense witness Ms. Narkeita James, the driver of the vehicle, testified that the tail light was merely cracked. Detective Hebert testified, "And I can't remember – sitting here today, I cannot remember if it was just broken, or it was not illuminated." Transcript of Motion to Suppress Hearing 11/16/2009, p. 18 (doc. 21). Detective Hebert was the officer who initiated the traffic stop and he was the officer who spoke with the driver, Ms. James, at the scene about the reason for the traffic stop. Additionally, Detective Hebert prepared a report in connection with the stop in which he reported the tail light was "broken." However, at the evidentiary hearing, Detective Hebert could not recall whether "broken" meant that the tail light was cracked or that it was burned out. Transcript, p. 19-20 (doc. 21). Detective Hebert also incorrectly believes that a cracked tail light would violate Louisiana's traffic laws. Transcript, p. 18 (doc. 21).

Because of Detective Hebert's involvement in the decision to effect the stop and because of his inability to recall whether the car's tail light was actually burned out, the Court finds that the officers lacked the probable cause or reasonable suspicion to believe a traffic violation had occurred. The Court finds the government failed to meet its burden of proving the constitutionality of the traffic stop by a preponderance of the evidence.

## IV. CONCLUSION

The traffic stop at issue was not reasonable under the Fourth Amendment because the officers who effected the stop lacked the probable cause or reasonable suspicion necessary to stop the vehicle. Because the Court finds the traffic stop was not based on probable cause or reasonable suspicion that the vehicle was in violation of a traffic law, defendant's motion as it relates to the legality of the pat-down search of the defendant is now moot. For the foregoing reasons, defendant's motion to suppress (doc. 14) is hereby GRANTED.

Signed in Baton Rouge, Louisiana, on March 10, 2010.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**